E-FILED
Friday, 06 March, 2015 03:14:34 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MATTHEW T. CULLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 12-cv-1032 |
| | ) | |
| | ) | |
| MICHELLE SADDLER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge.**

Plaintiff, proceeding pro se, claims that he was required in prison to participate in a religious substance abuse treatment program—a program based on the 12-steps of Alcoholics Anonymous (AA), which requires reverence to a "higher power." Cross-summary judgment motions are before the Court.

The undisputed facts show that Plaintiff could not be considered for discretionary good time credit under 730 ILCS 5/3-6-3(a)(3) unless he was enrolled in a prison substance abuse treatment program, and the only program available to him was a religious one. The facts in this case are substantively

indistinguishable from Kerr, a Seventh Circuit case from nearly 19 years ago which held that eligibility for parole cannot be conditioned on completion of a religious treatment program.

Summary judgment is, therefore, warranted for Plaintiff, except as to Defendant Taylor, whom Plaintiff admits was not in charge during the relevant time. Remaining is Plaintiff's damages claim for $350.00 plus unspecified costs of suit, which will be dealt with in further proceedings.

## FACTS

On October 19, 2009, as part of a plea agreement, Plaintiff pled guilty to aggravated driving under the influence, 625 ILCS 5/11-501(d)(1)(A), a class four felony. He was sentenced to three years in the Illinois Department of Corrections. (10/19/09 sentencing court Order, d/e 50-2, p. 1; sentencing transcript, d/e 50-5.) The sentencing court found that the offense "was committed as a result of the use of, abuse of, or addiction to alcohol or a controlled substance." Id. During the sentencing, Plaintiff noted his objection to participating in a substance abuse treatment based on the "twelve-step program" of Alcoholics Anonymous because

Plaintiff is agnostic. The sentencing court warned Plaintiff that participating or not participating in substance abuse treatment would likely have some impact on Plaintiff's ability to earn good time credits, but that the IDOC had "a full range of people with religious, different religious viewpoints, including no religion, and 12 steps; and they will respect all that, and they deal with that on a regular basis." (sentencing transcript, p. 26.)

When Plaintiff arrived at the Stateville Northern Reception and Classification Center for processing on or about October 22, 2009, he was asked whether he wished to participate in a substance abuse treatment program at Sheridan Correctional Center. (Pl.'s Dep. pp. 9, 11-20). However, Plaintiff declined the offer after learning that the substance abuse treatment program at Sheridan is based on the 12-step program. Plaintiff was not offered a secular alternative and was transferred to Western Illinois Correctional Center about one week later. Plaintiff believes that the environment and programs at Sheridan were more desirable than those at Western, but he provides no specifics or evidence to support that assertion. Both prisons are medium security, according to the

IDOC website. www2.illinois.gov/idoc/facilities (last visited March 5, 2015).

Plaintiff understood, from what others had told him, that at the time Plaintiff entered the IDOC, the IDOC had an early release program available to first time offenders, which might enable Plaintiff to receive six months of discretionary good time earlier than usual. (Pl.'s Dep. p. 30). No further information is provided about the specifics of this program, but Defendants do not dispute Plaintiff's understanding.

When Plaintiff arrived at Western Correctional Center, Defendant McNeff was assigned as Plaintiff's counselor. Defendant McNeff also acted as a substance abuse counselor and administered a substance abuse treatment program at Western. (McNeff Aff., para. 1-2.)

Defendant McNeff advised Plaintiff that, because the sentencing judge had recommended substance abuse treatment, Plaintiff must participate in the treatment to be considered for discretionary good time. (Defs.' Undisputed Fact 20; McNeff Aff., para. 8-10.) Discretionary good time is governed by an Illinois statute which allows the IDOC Director to award up to 180 days of

good time, which is in addition to day-for-day good time inmates like Plaintiff can earn as a matter of course. 730 ILCS 5/3-6-3(a)(2.1), (3)(1). Whether discretionary good time is actually awarded to an eligible inmate lies within the discretion of the Director. 730 ILCS 5/3-6-3(a)(3). "Discretionary good time" is the Court's nomenclature: Defendants refer to Section 5/3-6-3(a)(3) good time as "meritorious good time."

According to Defendant McNeff's affidavit:

> 6. The substance abuse treatment program at Western was not a part of Alcoholics Anonymous ("A.A.") and did not consist of 12 steps. The program did utilize modified versions of some of A.A.'s 12 steps, but did not require that participants recognize the existence of "God," any deity, or other monotheistic entity.
>
> 7. The substance abuse program at Western did reference a higher power, but when it did both I and the material emphasized that such higher power could be anything, according to the participants' perception.

Defendant McNeff does not dispute that at the treatment meetings she passed out books on the twelve-step program. She also does not dispute Plaintiff's contention that Western's program was based on the Hazelden Foundation's "Design for Living" materials, which, according to Plaintiff, borrowed heavily from AA's

twelve-step principles, urging participants to acknowledge a "higher power" to whom one must admit their defects. (Pl.'s Mot. Sum. J., d/e 54, p. 8.) The Hazelden Betty Ford Foundation is an entity in Minnesota dedicated helping individuals overcome addiction. The Foundation publishes books, including a book titled, "Living with Your Higher Power: A guide to the Big Book's Design for Living." [www.hazelden.org](www.hazelden.org) (last visited 3/3/2015). According to the website for Alcoholics Anonymous, the "Big Book" is the basic text published by Alcoholics Anonymous which explains the AA approach. [www.aa.org](www.aa.org) (last visited 3/4/15). Whether this particular book or the materials in it were used at Western is not in the record, but Defendants do not dispute Plaintiff's assertion that that some of the material used in the program at Western derides agnostics and focuses on accepting a higher power. (Pl.'s Compl. p. 11; Pl.'s Mot. Summ. J., d/e 54, p. 19.)

Plaintiff objected to the religious aspects of the program, as well as to other parts of the program. According to Plaintiff, he sent a letter to Defendants Saddler, Binion-Taylor, and Nance about needing a secular substance abuse treatment program but received no response. (Pl.'s Mot. Summ. J., d/e 54, p. 10.)

In order to be eligible for discretionary good time, Plaintiff took the substance abuse program at Western from January 2010 through May 10, 2010, when he completed the program. However, before Plaintiff started taking the substance abuse program, the IDOC suspended the six-month early-release program. (Pl.'s Dep. p. 30.) Defendant McNeff purportedly reassured Plaintiff and other inmates that she expected the early-release program to be reinstated and recommended that they continue with the treatment. (Pl.'s Dep. p. 30). The early-release program was not reinstated, however. Despite the suspension of the early-release program, Plaintiff was still able to earn about three and ½ months of good time credit for completing college and vocational courses, in addition to statutory day-for-day good conduct credit. (Pl.'s Dep. pp. 8-11).

## ANALYSIS

As the Court noted in its prior order, the Establishment Clause refers to the part of the First Amendment to the United State Constitution which states "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The Establishment Clause

prohibits the government from coercing an individual to participate in a religious activity.

In Kerr v. Farrey, 95 F.3d 472, 479-80 (7th Cir. 1996), the Seventh Circuit held that requiring an inmate to attend a narcotics abuse treatment program based on the 12 steps violated the Establishment Clause. The inmate in Kerr was required to "observe" Narcotics Anonymous ("NA") meetings or risk a higher security classification and potential adverse effects on parole. Id. at 475. The inmate in Kerr did not actually suffer a higher security classification, but he did assert that his parole had been affected and could be affected in the future.

The twelve steps of the NA program at issue in Kerr relied heavily on the belief in a "power greater than ourselves," though the Warden in Kerr averred that a greater power could include a belief in a nonreligious power such as willpower. Id. The NA principles were set forth in the Kerr opinion as follows:

> 1. We admitted that we were powerless over our addiction, that our lives had become unmanageable.
> 
> 2. We came to believe that a power greater than ourselves could restore us to sanity.
> 3. We made a decision to turn our will and our lives over to the care of God as we understood Him.

> 4. We made a searching and fearless moral inventory of ourselves.
>
> 5. We admitted to God, to ourselves, and to another human being the exact nature of our wrongs.
>
> 6. We were entirely ready to have God remove all these defects of character.
>
> 7. We humbly asked Him to remove our shortcomings.
>
> 8. We made a list of all persons we had harmed, and became willing to make amends to them all.
>
> 9. We made direct amends to such people wherever possible, except when to do so would injure them or others.
>
> 10. We continued to take personal inventory, and when we were wrong promptly admitted it.
>
> 11. We sought through prayer and meditation to improve our conscious contact with God, as we understood Him, praying only for knowledge of His will for us, and the power to carry that out.
>
> 12. Having had a spiritual awakening as a result of those steps, we tried to carry this message to addicts and to practice these principles in all our affairs.

Kerr, 95 F.3d at 474.

The Kerr Court concluded that the 12 steps were "fundamentally based on a religious concept of a Higher Power." The Court also found that the inmate had been coerced to take the

program because refusing to do so might result in a higher security classification or negatively affect parole determinations. 95 F.3d at 480. Kerr held that the Establishment Clause had been violated but granted qualified immunity to the defendants. *See also* Inouye v. Kemna, 504 F.3d 705 (9th Cir. 2007)(parole officer violated establishment clause by requiring parolee to attend AA/NA meetings, "which are rooted, the parties agree, in a regard for a "higher power.")

Defendants make no meaningful attempt to argue that the program at Western is not religious, and the Court sees no meaningful distinction between the Western program and the program in Kerr. The Western program relied significantly on AA principles, at least on this record, which Kerr has already determined to be a program religious in nature. That a "higher power" can be anything the participant decides makes no difference—the "concept of a Higher Power" is religious. Kerr, 472 F.3d at 480.

Defendants try to distinguish Kerr on the coercion element, arguing that no one required Plaintiff to take the class in this case and Plaintiff was not threatened with discipline. Yet, Defendants do

not deny that Plaintiff had to complete the substance abuse program in order to be eligible to receive discretionary good time. 730 ILCS 5/3-6-3(a)(4.5) prohibits the award of discretionary good time when "the court's sentencing order recommends a prisoner for substance abuse treatment . . . unless he or she participates in and completes a substance abuse treatment program."[1] While the sentencing order does not expressly recommend substance abuse treatment, Defendant McNeff admitted that was the IDOC's interpretation when she told Plaintiff that Plaintiff would not be eligible for discretionary good time unless he completed the substance abuse program. (Defs.' Undisp. Fact 20.)

Potential negative effects on the eligibility for early release was one of the coercions in Kerr. Kerr, 747 F.3d at 473 ("suffering adverse effects for parole eligibility").[2] That the IDOC Director decides whether an inmate actually receives discretionary good time does not change the fact that an inmate cannot even be considered

---

[1] The IDOC Director can waive this requirement, 730 ILCS 5/3-6-3(a)(4.5), but no one asserts that a waiver was sought or granted, or that Plaintiff was informed of this possibility.
[2] Defendants argue that Plaintiff was never eligible to receive discretionary good time because inmates serving convictions for aggravated driving under the influence are not eligible for discretionary good time. However, this exception applied only if death resulted from the DUI, as defined by 11-501(d)(1)(F) of the Illinois Vehicle Code. Plaintiff was convicted under a different section—11-501(d)(1)(A)(multiple DUI offenses).

for the discretionary good time until he completes the treatment program.

In short, the Court sees no material distinction between this case and Kerr.  The Court, therefore, holds that Plaintiff was "coerced" to take the substance abuse treatment program at Western Illinois Correctional Center because that was the only way for Plaintiff to be considered for discretionary good time. [3]

Defendants also argue for qualified immunity, but qualified immunity is not warranted.  The defendants in Kerr were granted qualified immunity, but that was nearly 19 years ago.  Kerr clearly established a constitutional right to be free from the coercion Plaintiff experienced.  Brokaw v. Mercer County, 235 F.3d 1000, 1022 (7th Cir.2000)(Qualified immunity shields government officials from liability under Section 1983 "for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.")

---

[3] Plaintiff asserts that he could have been subjected to discipline, but that assertion is not supported by evidence.  He also asserts that his transfer to Western instead of Sheridan amounted to discipline, but that assertion is also not supported.

Defendants also argue that the only one of them personally responsible is Defendant McNeff. Yet, as the Court explained in its prior order, personal responsibility can arise from the creation and implementation of an unconstitutional policy. *See* Roe v. Elyea, 631 F.3d 843 (7th Cir. 2011)(IDOC medical director could be personally liable for instituting alleged unconstitutional policy regarding treatment of inmates with Hepatitis C). The administrative defendants do not dispute Plaintiff's assertion that they were responsible for implementing a secular substance abuse treatment program and that they were aware that no secular alternatives were available to Plaintiff. The only defendant who should be dismissed on this record is Defendant Taylor. Plaintiff admits that Taylor did not serve as Assistant Director until after Plaintiff had completed the program. (Pl.'s Mot. Summ. J. p. 2, para. 6, d/e 54, p. 2.)

What remains is Plaintiff's claim for damages. In his Complaint, Plaintiff seeks $350 in damages for emotional distress, plus court costs. That seems reasonable, but Plaintiff must put evidence in the record that he actually suffered emotional distress or other harm. Horina v. City of Granite City, 538 F.3d 624, 637

(7th Cir. 2008)("Although a district court may award compensatory damages to a successful § 1983 plaintiff, it may not award damages to account for 'the abstract value of a constitutional right.'")(quoted cite omitted). Otherwise, Plaintiff may recover only $1.00, but he would still be able to recover his reasonable costs. Id. Plaintiff will be given an opportunity to substantiate his claim for compensatory damages. The Court suggests that if a trial is necessary on compensatory damages, the parties might consider waiving the right to a jury trial, given that Plaintiff seeks only $350.

**IT IS THEREFORE ORDERED:**

1) Defendants' motion for summary judgment is granted in part and denied in part (49). Summary judgment is granted only for Defendant Taylor. Defendants' summary judgment motion is otherwise denied.

2) Plaintiff's motion for summary judgment (54) is granted as to liability for Defendants Saddler, Nance, McNeff, Binion-Taylor, and Randle. Plaintiff's motion for summary judgment is denied as to Defendant Taylor.

3) Plaintiff's motion to compel Mr. Godinez to comply with Plaintiff's subpoena is denied as moot (64).

4) By March 31, 2015, Plaintiff is directed to submit an affidavit and any other evidence he has to support his claim for $350 in compensatory damages.

5) By March 31, 2015, Plaintiff is directed to submit the amount he seeks for reimbursement for costs, itemized and with receipts attached.

6) By April 17, 2015, Defendants are directed to file any objections to the damages and costs Plaintiff seeks.

ENTER: March 6, 2015

FOR THE COURT:

                              **s/Sue E. Myerscough**
                              SUE E. MYERSCOUGH
                        UNITED STATES DISTRICT JUDGE