IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MATTHEW T. CULLEN, | ) |
| Plaintiff, | ) |
| v. | ) 12-cv-1032 |
| MICHELLE SADDLER, et al., | ) |
| Defendants. | ) |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge.**

The Court granted summary judgment to Plaintiff last March, concluding that he had been coerced to take a religious substance abuse treatment program during his incarceration in Western Illinois Correctional Center. The only issue remaining is Plaintiff's claim for compensatory damages and his motion for costs.

This case is a good example of how the importance of a constitutional right is often not measurable in money. The right to be free from religious coercion by the government is an important right. The Court would not be surprised if changes are made within

the IDOC as a result of this case. Those changes may be a more accurate measure of the value of this case than the dollars awarded.

I. **Plaintiff has no evidence to sustain an award of more than $350 for compensatory damages, and his request for punitive damages comes too late.**

In granting summary judgment to Plaintiff, the Court ordered Plaintiff to substantiate his claim for $350 in compensatory damages. Plaintiff's governing complaint had sought $350 for compensatory damages, an amount he confirmed in his interrogatory responses.

Plaintiff now he believes that he can support a claim for more than $350 in compensatory damages. Plaintiff asks that a jury decide the amount of compensatory damages. Defendants move for summary judgment, arguing that Plaintiff is bound by the $350 figure.

Plaintiff's request for $350 in compensatory damages in his complaint does not automatically preclude him from being awarded more, though much more would arguably prejudice Defendants, who have been working under the assumption that the claim is

worth only $350.  Bail v. Cunningham Bros., Inc., 452 F.2d 182 (7th Cir. 1971)("There is substantial authority for the proposition that pursuant to Rule 54(c) a claimant may be awarded damages in excess of those demanded in his pleadings."); Kaszuk v. Baker and Confectionery Union and Industry Intern. Pension Fund, 791 F.2d 548 (7th Cir. 1986)("'[A] substantial increase in the defendant's potential ultimate liability can constitute specific prejudice barring additional relief under Rule 54(c))(*quoting* Atlantic Purchasers, Inc. v. Aircraft Sales, Inc., 705 F.2d 712, 716-17 (4th Cir. 1983).  A claim worth only $350 is not going to garner much of the limited resources of the IDOC or the Illinois Attorney General.

However, even if a jury trial were held on damages, no rational juror could award more than $350 in compensatory damages on this record.  Damages cannot be awarded for the "'abstract value of a constitutional right.'"  Horina v. City of Granite City, 538 F.3d 624, 637 (7th Cir. 2008) (quoted cite omitted).   This means that Plaintiff must have evidence that he suffered harm beyond the violation of his First Amendment right in order to recover more than nominal damages of $1.00.  Id.  In Horina, the Seventh Circuit

reversed a district court's award of $2,100 in compensatory damages for "'humiliation, emotional distress and loss of First Amendment rights'" arising from the violation of the plaintiff's First Amendment right to distribute leaflets. The Seventh Circuit found no evidence of compensable humiliation or emotional distress. Similarly, in Denius v. Dunlap, 330 F.3d 919, 929 (7th Cir.2003), the Seventh Circuit affirmed the denial of compensatory damages to a plaintiff who was fired in violation of his First Amendment right to withhold consent to the release of personal information. The Denius Court reasoned that "[b]are allegations by a plaintiff that the defendant's conduct made him 'depressed,' 'humiliated,' or the like are not sufficient to establish injury unless the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendants' action." See also Wantz v. Experian Information Solutions, 386 F.3d 829, 834 (7th Cir. 2004)(plaintiff's own testimony about humiliation, embarrassment, and distress not enough to prove compensatory damages for credit agency's false credit report)(abrogated on other grounds by Safeco Ins. Co. of America v. Burr, 551 U.S. 47 (2007)).

Like Denius, the claims for emotional distress in this case are too vague and conclusory to support an award of compensatory damages. Plaintiff asserts that he suffered "tremendous emotional distress, which often manifested itself physically, such as some loss of sleep due to anxiety and depression relating to the IDOC 12-step programming . . . ." (Pl.'s Resp., p. 11, d/e 80). He asserts that "both the events in my claim and executing this present lawsuit to seek redress for those occurrences have caused me much frustration, stress, anxiety every day since they occurred. (Pl.'s Aff. of Damages, p. 2, d/e 71.) However, he offers no objective evidence that his ability to function daily was affected in any significant way. The Court is not belittling the frustration and offense that Plaintiff felt at having to pretend he believed in a higher power, but that is not enough to prove compensatory damages under current case law.

Plaintiff also asserts that he had to be transferred to Western Illinois Correctional Center, a "more dangerous, restrictive prison" because Sheridan Correctional Center, the prison where Plaintiff was originally going to be placed, did not have a secular program.

(Pl.'s Resp., p. 11, d/e 80).  He contends that he was subjected to sexual harassment and threats at Western, which he does not believe would have happened in Sheridan.  (Pl.'s Aff. of Damages, pp. 1, 20-21, d/e 71.)  In support of this contention, Plaintiff filed an independent evaluation of Sheridan Correctional Center which details Sheridan's focus on substance abuse treatment.  According to the report, in 2004 "the Illinois Department of Corrections opened the Sheridan Correctional Center as a fully-dedicated, modified therapeutic community for incarcerated adult male inmates."  ("A Process and Impact Evaluation of the Sheridan Correctional Center Therapeutic Community Program During Fiscal Years 2004 through 2010," p. 8, attached to Pl.'s Resp. to Summ. J. Mot., d/e 63-1)(hereinafter referred to as "Report.")  To be eligible for placement at Sheridan during the relevant time, inmates must have been serving from at least six to nine months minimum to 36 months maximum, and inmates with murder or sex offense convictions were not eligible.  Id. pp. 8, 20.  Plaintiff maintains that the Sheridan treatment program also provided post-release guidance that was not offered at Western.

That Sheridan might have been a better prison for Plaintiff is not grounds for compensatory damages. Plaintiff has a First Amendment right to be free from coercion to participate in a religious treatment program. Kerr v. Farrey, 95 F.3d 472, 479-80 (7th Cir. 1996); He had no constitutional right to be in a particular treatment program at a particular prison. *See* Meachum v. Fano, 427 U.S. 215, 225 (1976)("That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules."); Garza v. Miller, 688 F.2d 480, 485 (7th Cir. 1982)(inmate has no constitutional interest in educational or job opportunities). Sheridan's lack of a secular program did not violate Plaintiff's constitutional rights nor did his transfer to Western instead of Sheridan. Had there been a secular treatment option at Western, as Plaintiff had been told, then no constitutional violation would have occurred, even if Plaintiff would have preferred to stay at Sheridan.

Plaintiff next asserts that his incarceration was prolonged for

six months because Sheridan did not have a secular program, but this argument is hard to follow. (Pl.'s Aff. of Damages, pp. 5-6.) The argument seems to be that, had a secular program been offered at Sheridan, Plaintiff would have enrolled in the program at Sheridan and been awarded all six months or at least some discretionary good time before the Governor suspended the early release program in December 2009.[1]

This argument is speculative at best. Plaintiff has no evidence that the date he began or enrolled in treatment was the date on which he would have begun receiving discretionary good time credits. He points to no inmate who was in the middle of substance abuse treatment before the early release program was suspended who received any discretionary good conduct credit. In fact, he points to no inmate who received *any* discretionary good time credit during the suspension of the early release program. He has no evidence that the two or three month delay in starting the treatment program had any impact on his release date. [2]

---

[1] Several kinds of early release programs were available. The Court is referring to the early release programs suspended by the former Governor Quinn which allowed up to six months of good time to be awarded an inmate in the discretion of the IDOC director. The Court is not referring to day-for-day credit or credit for the completion of educational programs and the like.
[2] Whether Plaintiff could have begun a treatment program in Sheridan in late October is doubtful. In November 2009, a "pre-treatment" unit was established at Sheridan in November

Plaintiff points to a footnote in the Sheridan report, but the footnote does not support his argument. The footnote says that the suspension of the early release program "applied to inmates who had not yet been awarded the MGT and SMGT credit, which only impacted inmates admitted to prison since December 2009." (Report, p. 41.) This sentence does not stand for the proposition that the start date of an inmate's treatment determined whether an inmate received discretionary credit. The sentence says that already-awarded credit remained intact and that only inmates admitted to prison after 2009 were impacted by the early release program suspension. The former proposition is irrelevant—Plaintiff did not have any good time revoked. The latter proposition is confusing and incorrect—inmates admitted to prison before December 2009 were also victims of the suspension of the early release program. Plaintiff is an example.

In sum, no evidence suggests that Plaintiff suffered any compensable harm beyond the violation of his First Amendment

---

2009, which was basically a holding area for inmates waiting to begin treatment because of a lack of resources at Sheridan. (Report, p. 41.) Plaintiff also asserts that he did not actually start the treatment program at Western until May of 2010 instead of January, but the difference is immaterial because he has not shown that the date he started treatment determined whether he could receive the discretionary good time.

right.  However, Defendants do not object to Plaintiff's claim for $350 in compensatory damages so Plaintiff will be awarded $350 in compensatory damages.

Plaintiff also argues that he should be allowed to seek punitive damages, in order to deter Defendants and other prison officials from trampling on prisoners' First Amendment right to be free from religious coercion.  Plaintiff's request for punitive damages now, after discovery has closed and the Court ruled in his favor on liability, is essentially a motion to amend his complaint.  The request is denied on grounds of undue delay and prejudice to Defendants.  See Winters v. Fru-Con, Inc., 498 F.3d 734 (7th Cir. 2007)(affirming denial of motion to add punitive damages claim three years into litigation).  A claim for punitive damages "affects the defendant's discovery and trial strategy" by increasing the defendant's potential liability and necessitating evidence of the defendant's good faith.  Id.  Adding a punitive damages claim at this late date would require the reopening of discovery for an inquiry into the subjective state of Defendants' minds, which would significantly prejudice Defendants, who have relied on the $350

figure throughout this case. Plaintiff gives no good reason for his delay---his deterrence argument for punitive damages is not based on any new or surprising evidence. He simply changed his mind after the Court ruled in his favor, which is not persuasive grounds for an amendment at this late date.

### II. Plaintiff will be awarded costs in the amount of $135.00 ($75.00 for a transcript and $60 to serve a subpoena).

As the prevailing party, Plaintiff can recover the costs described in 28 U.S.C. § 1920, provided those costs were "reasonable and necessary to the litigation."[3] Little v. Mitsubishi Motors N.A., Inc., 514 F.3d 699, 702 (7th Cir. 2008). The costs recoverable under § 1920 are limited, typically covering only a fraction of the total expenses. Taniguchi v. Kan Pacific Saipan, Ltd., 132 S.Ct. 1997, 2006 (2012)("It comes as little surprise, therefore, that 'costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit.'")(quoted cite omitted).

---

[3] Plaintiff cannot recover attorney fees under 42 U.S.C. Section 1988 because he is pro se. Kay v. Ehrler, 499 U.S. 432, 435–36 (1991)(pro se litigant cannot recover attorney fees under 42 U.S.C. § 1988).

Section 1920 allows the recovery of costs for transcripts and marshal fees (which cover subpoena fees). Williams v. Fico, 2015 WL 3759753 (N.D. Ill. 2015)("Section 1920(1) permits the Court to assess costs for clerk and marshal fees, a category that includes costs associated with the service of subpoenas.")

Defendants have no objection to the transcript fee, but they do object to the service of a subpoena on former IDOC Director Salvador Godinez. Defendants argue that the subpoena was unnecessary and sought irrelevant, excessive information. The Court does not entirely agree. While some of the information sought was irrelevant or overbroad, other information was arguably relevant, such as contracts between the IDOC and substance abuse treatment providers. Plaintiff seeks $60 for serving this subpoena, which is reasonable. See Williams v. Fico, 2015 WL 3759753 (N.D. Ill. 2015)(U.S. Marshals charge $65 per hour plus travel and out of pocket to serve subpoena). This expense is allowed.

Plaintiff also seeks $228.50 in postage. Defendants argue that postage costs are not recoverable under § 1920. The answer is not clear. Compare Tchemkou v. Mukasey, 517 F.3d 506, 512 (7th Cir.

2008)("[T]his court has construed section 1920 to include amounts spent on filing fees, postage, telephone calls and delivery charges.") *with* Wahl v. Carrier Mfg. Co., Inc., 511 F2d 209 (7th Cir. 1975)(". . . charges for telephone calls and, ordinarily, for postage are not" recoverable under § 1920). The weight of authority seems to be that postage is not recoverable under § 1920 because postage is not specifically listed in that statute. 10 Charles Alan Wright, et al., Fed. Prac. & Proc. Civ. § 2677 (3d ed.)("[T]axation usually is denied for expenses such as . . . postage . . . .)(other listed examples omitted).

In any event, the Court agrees with Defendants that Plaintiff has not established that the amount he seeks for postage was reasonable and necessary. Nearly all of the receipts are for overnight or priority mail, which is many times more expensive than first class mail. Plaintiff has not justified these expenditures. The postage expenses will, therefore, be denied.

**IT IS THEREFORE ORDERED:**

1) Defendants' motion for partial summary judgment is granted (77). Plaintiff is awarded $350 in compensatory damages.

2) Plaintiff's motion for costs is granted in part and denied in part (71). Costs are taxed against Defendant pursuant to 28 U.S.C. § 1920 in the amount of $135.00. Plaintiff's motion is otherwise denied.

3) The clerk is directed to enter judgment in favor of Plaintiff and against Defendants Saddler, Nance, McNeff, Binion-Taylor, and Randle in the amount of $350.00, with costs awarded to Plaintiff and against said Defendants in the amount of $135.00. The clerk is further directed to enter judgment in favor of Defendant Gladyse Taylor and against Plaintiff.

4) Defendant Salvador Godinez is terminated. Mr. Godinez was added as a respondent to Plaintiff's motion to compel a response to Plaintiff's subpoena to Mr. Godinez. The motion to compel was denied as moot on March 6, 2015.

5) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the

entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis should identify the issues Plaintiff will present on appeal. See Fed. R. App. P. 24(a)(1)(c).

ENTER:   September 14, 2015

FOR THE COURT:

**  s/Sue E. Myerscough  **
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
